IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | |
|---|---|
| EVERLIGHT ELECTRONICS CO., LTD.,<br><br>  Plaintiff,<br><br>  v.<br><br>AMAZON.COM, INC., and<br>AMAZON.COM SERVICES LLC<br><br>  Defendants. | Case No. 6:21-cv-00906-ADA<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF EVERLIGHT ELECTRONICS CO. LTD.'S
SUR-REPLY CLAIM CONSTRUCTION BRIEF**

I.   INTRODUCTION

Defendants Amazon.com, Inc. and Amazon.com Services LLC ("Defendants") continue to pursue arguments that ignore a key tenant of claim construction—a person of ordinary skill in the art ("POSITA") must read the claims in view of the specification and prosecution history. Defendants want to view the claim language in a vacuum to muddy the waters and repeat the "ambiguity" attacks that ignore what the specification teaches a POSITA.[1]  The claim terms before the Court are not ambiguous and Defendants have failed to provide clear and convincing evidence to demonstrate that a POSITA would find the claim terms indefinite. Plaintiff Everlight Electronics Co., Ltd.'s ("Everlight") request that the claims require no construction and be accorded their plain and ordinary meaning should be granted.

II.   ARGUMENT

A.   "the opening for the n-electrode of the first insulating layer"

*A POSITA understands the plain and ordinary meaning of the claim term*. This claim term is not ambiguous, and a POSITA would understand its plain and ordinary meaning, which is that "the opening for the n-electrode of the first insulating layer" refers to *all of the openings* in the first insulating layer for the n-electrode, whether there be one or more than one. First, Defendants cannot argue there is any ambiguity when there is only one opening for the n-electrode in the first insulating layer. Second, Defendants admit that a POSITA could believe "the opening…" refers to all of the openings of the first insulating layer when there are multiple

---

[1] Defendants' claim that the parties' differing POSITA standards are a "distinction without a difference" is wrong—there is a significant difference. Dr. Lebby's POSITA definition is broad enough that the artisan can have "optoelectronic" experience but without experience with LEDs. Dr. Bretschneider's POSITA standard requires LED experience. This is a distinction with a difference. The fact that Dr. Lebby may be a POSITA under either standard is not relevant given he bases his opinions on a POSITA standard that does not require experience working with LEDs.

2

openings. *See* Dkt. No. 42 (Defendants' Reply Claim Construction Brief) at 6.[2] Thus, Defendants' burden is to demonstrate by clear and convincing evidence that a POSITA would believe "the opening…" refers to less than all openings when there are multiple openings for the n-electrode. A POSITA reading the claim term in the context of the intrinsic record would not find this interpretation plausible.

Claim terms must be construed "in the context of the entire patent, including the specification," *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313–14 (Fed. Cir. 2005) (*en banc*), but Defendants fail to identify any support in the specification for a construction of "the opening…" that could refer less than the number of openings in the first insulating layer for the n-electrode. Defendants' theory purposely focuses on the claim language in a vacuum and improperly ignores the teachings of the specification. *Id*. Indeed, the specification explicitly teaches the opposite of what Defendants claim a POSITA could believe. First, each opening in the first insulating layer is purposely formed. Dkt. No. 1-1 ('126 Patent) at 7:59-64, 9:63-10:5. Second, every opening formed is used for making an electrical connection between the first and second electrodes (true for both n and p-electrodes). *Id*. at 7:16-24, 8:15-20, 10:23-29, 11:49-57, 12:3-16. Nowhere does the specification teach forming an opening in the first insulating layer and not making an electrical connection with it. Nor does the specification suggest any reason for doing so. Defendants' argument that a POSITA would not understand the term with reasonable certainty is untethered to the specification's teachings.

***A POSITA understands the term refers to all openings for the n-electrode***. Defendants next take issue with Everlight's indefinite/definite article argument. *Baldwin Graphic Sys., Inc. v.*

---

[2] Documents cited by Docket Number (Dkt. No.) citing to a page number use the page number in the top right of the page rather than the page number at the bottom of the page.

3

*Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008); s*ee also Celgene Corp. v. Peter*, 931 F.3d 1342, 1350 (Fed. Cir. 2019). Defendants, however, ignore the language of claim 10, which recites "*an* opening for the n-electrode…" followed by the claim language "*the* opening for the n-electrode…" to refer back to the same claim term.[3] The rule enunciated by *Baldwin Graphic Sys.* applies to this claim language. To the extent Defendants argue that adding the language "at least one of each of" before the "an opening for the n-electrode…" language precludes application of the rule, they cite no authority for the proposition. More importantly, Defendants fail to acknowledge that their lack of antecedent basis cases[4] concede that, even if there is an absence of explicit antecedent basis, the claim term is not indefinite if a POSITA would find it reasonably ascertainable. A POSITA would understand that the plain and ordinary meaning of the claim term, in view of the intrinsic record, would refer to all openings for the n-electrode in the first insulating layer, whether there is one or more than one. Dkt. No. 39 (Everlight's Responsive Claim Construction Brief) at 13-14.

***A POSITA understands there can be multiple openings for the n-electrode***. Defendants' next contention that the specification cannot teach a POSITA to make an embodiment with more than one opening for the n-electrode in the first insulating layer is based on a claim that the specification "teaches against it" by instructing a POSITA to make the first n-electrode "as small as possible."[5] Dkt. No. 42 at 7 (citing 2:16-26; 7:35-41). Neither of Defendants' specification citations actually supports Defendants' argument.

---

[3] "Other claims, asserted and unasserted, can provide additional instruction because "terms are normally used consistently throughout the patent . . . ." *Pisony v. Commando Constr., Inc.*, No. W-17-CV-00055-ADA, 2019 U.S. Dist. LEXIS 31524 at *4 (W.D. Tex. Jan. 23, 2019) citing *Phillips*, 415 F.3d at 1314.
[4] ECF# 28 at 7 citing *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x, 522, 526 (Fed. Cir. 2020) and *Synqor v. Artesyn Techs., Inc.*, No. 2:07-cv-497-TJW-CE, 2010 U.S. Dist. LEXIS 74808 at * 84 (E.D. Tex. July 26, 2010)

4

Defendants first citation to 2:16-26 does not discuss the disclosed invention at all but rather addresses the *prior art* conventional LED chip with a single n-electrode to illustrate the manufacturing difficulties overcome by the '126 patent. The second citation to 7:35-41 does not even discuss making the n-electrode "as small as possible"—rather, it states simply that the area for forming the first n-electrode should be "sufficiently smaller" than the area for the p-type semiconductor layer and identifies "10% of the area of the p-type semiconductor layer" as an example. This teaching supports Everlight's position because by making the n-electrode a percentage the size of the p-type semiconductor layer, the size of n-electrode will increase as chip size increases. Dkt. No. 39-1 (Bretschneider Declaration) at ¶¶ 60-61. Thus, POSITA would understand that, as the size of the n-electrode increases, more than one opening in the n-electrode is necessary to provide sufficient current to the first and second n-electrodes. Indeed, Dr. Lebby admits that a POSITA would understand there could be more than one opening for the n-electrode in the first insulating layer.[6] Dkt. No. 29-5 (Lebby Declaration) at ¶ 77 ("A person of skill in the art could fabricate an LED to have electrical connections between the second n-electrode and the first n-electrode through … all of the *openings*.")(emphasis added). Consequently, there is no support for Defendants' argument that a POSITA would believe that the n-electrode would be restricted to a single opening in the first insulating layer.

B.  **"the opening for the p-electrode of the first insulating layer"**

***A POSITA understands the plain and ordinary meaning of the claim term***. For the same reasons discussed above, the claim term is not ambiguous, and a POSITA would understand its

---

[6] Defendants' claim that Dr. Bretschneider has not adequately rebutted some of the ideas Dr. Lebby tosses out regarding a POSITA purportedly "selectively mak[ing] electrical connections to the first n-electrode" ignores that Dr. Bretschneider opined unequivocally that a POSITA (using his standard) would understand to make electrical connections through all openings and that Defendants bear the burden on proof for indefiniteness.

plain and ordinary meaning, which is that "the opening for the p-electrode of the first insulating layer" refers to all of the openings in the first insulating layer for the p-electrode, whether there be one or more than one. Defendants fail to come up with any citations to the specification to support their contention that "the opening…" could refer to less than the number of openings in the first insulating layer for the p-electrode. In fact, the specification teaches that every opening for the p-electrode in the first insulating layer is used to make an electrical connection. Dkt. No. 1-1 at 7:16-24, 8:15-20, 10:23-29, 11:49-57, 12:3-16. Consequently, a POSITA would understand the term in a manner consistent with the specification. Defendants again want to focus solely on the claim language and fail to address how a POSITA would understand it in view of the specification. *See Phillips*, 415 F.3d at 1313–14. Based on the intrinsic record, a POSITA would find the term is not ambiguous and would understand its plain and ordinary meaning.

*A POSITA understands the term refers to all openings for the p-electrode*. For the same reasons as discussed above, a POSITA would find the term is reasonably ascertainable and is used in a manner consistent with the patent's disclosure. A POSITA would understand that the plain and ordinary meaning of the claim term, in view of the intrinsic record, would refer to all openings for the p-electrode in the first insulating layer, whether there is one or more than one.

C. **"dispersed virtually uniformly"**

*The intrinsic record supports the plain and ordinary meaning of the claim term.* A POSITA reading the "dispersed virtually uniformly" claim term in view of its context within the claim and the specification would understand its plain and ordinary meaning. Claim 4 is unequivocal in identifying the "first insulating layer" as the surface where the "plurality of openings for the p-electrode" are located and "dispersed virtually uniformly." A POSITA reading the specification describing Figures 2 and 11 would know where and how those openings are

located, and why there are different numbers of openings as between the two embodiments. Dkt. No. 1-1 at 11:49-12:22. What the POSITA would understand is consistent with the specification's explanation that the purpose of making the openings for the p-electrode is to make electrical connections, and that these openings are dispersed virtually uniformly to supply current sufficiently and in a virtually uniform manner to the entire first p-electrode to improve the uniformity of light transmission. ECF#1-1 at 7:59-64, 8:15-20,8:63-9:4, 9:63-10:5, 10:23-29, 11:49-59, 12:3-22. The patent further describes that these electrical connections are made either directly, or indirectly through intervening layers such as conductive layer 19. *Id*. at 12:3-22.

Based on this, a POSITA would understand that the openings for the p-electrode can be "dispersed virtually uniformly" across the area of the first insulating layer that would allow for a direct or indirect electrical connection to be made. ECF# 39-1 at ¶¶ 71-84.The specification expressly describes, and Figure 11 identifies, the area available for dispersing the openings when the conductive layer 19 is added and thereby expands the area available for openings that allow for electrical connections. This specification sets forth as specific example to inform a POSITA how to disperse the openings as the available area expands where it illustrates four openings 16b in Figure 11 compared to only two openings 16b Figure 2. ECF#1-1 at 11:49-12:22. Moreover, both Figures 2 and 11 teach only to locate openings 16b within portions of the first insulating layer that allow for direct or indirect electrical connections between the first and second p-electrodes. *Id*. at 11:60-12:22; Fig. 11.  As a result, a POSITA understands that when "dispersing virtually uniformly" the openings for the p-electrode in the first insulating layer, the openings cannot be placed in areas that would not allow for electrical contact to be made—*i.e*., the specification never

suggests placing an opening for the p-electrode in the area of the first n-electrode.[7] Thus, when a POSITA views "dispersing virtually uniformly" in light of the context of the claim language and the specification, he or she would understand the plain and ordinary meaning of the term and have reasonable certainty on where these openings can be "dispersed virtually uniformly.".

***Defendants' "reference surface" argument ignores the specification.*** Defendants' repeated claim that the "reference surface" is not a surface disclosed within the claim or is based on some unclaimed standard is once again a case of construing the claim term in a vacuum rather than in view of the intrinsic record. Defendants never cite to any portion of the specification to support this argument. Moreover, Defendants grudgingly acknowledge that Figures 1 and 9 disclose the area of the first insulating layer where openings can be dispersed virtually uniformly, but then throw out purported "undisclosed embodiments" as new alleged support for their indefiniteness arguments. Such conclusory contentions cannot meet the burden it bears to prove indefiniteness.

***The patent defines the claim term's metes and bounds.*** Defendants next argue that Dr. Bretschneider failed to identify where in the patent it discloses the boundaries for the area the openings should be dispersed virtually uniformly and omitted adding a figure to his declaration to support his opinion. This contention suggests Defendants are oblivious to Dr. Bretschneider's analysis in paragraphs 79 through 84 wherein he specifically addresses the portion of the specification that teaches how the area of the first insulating layer for dispersing the openings 16b

---

[7] Defendants have a curious response to Everlight's attack on Dr. Lebby's "newly created variations" of Figure 10 that depart from the patent's teachings. See Dkt. No. 39 at 20; Dkt. No. 29-5 at ¶¶ 105-108. Defendants admit that Dr. Lebby created these "variations" without tying them to the specification's teachings merely to illustrate inherent ambiguity. Dkt. No. 42 at 14 n.5. Such an approach seeks to eliminate the intrinsic record from how a POSITA would understand the claim term, which is improper and renders Dr. Lebby's opinion without value.

expands with the addition of the conductive layer 19.[8] Dkt. No. 1-1 at 11:49-12:22. He specifically relies on the teachings in the specification to inform how a POSITA would understand of this claim term. Dr. Bretschneider had no need to include a separate figure in his declaration to explain how this claim term is understood by a POSITA because Figures 2 and 11, and the accompanying discussion, clearly define the metes and bounds of the area where the openings can be placed. Dr. Lebby, by contrast, devotes 10 pages in his declaration to proffering reasons why this term is indefinite but assiduously avoids any reference to Figure 11.

### III.   CONCLUSION

For the foregoing reasons, Everlight requests that the Court find that Defendants have not proven by clear and convincing evidence that the claim terms at issue are indefinite and that claims 2, 3, and 10 (along with dependent claims 3 and 11) are invalid. Everlight further requests that the Court find the following claim terms require no construction and have their plain and ordinary meaning: "the opening for the n-electrode of the first insulating layer," "the opening for the p-electrode of the first insulating layer," and "dispersed virtually uniformly."

Dated: May 13, 2022

Respectfully submitted,
*/s/ William E. Davis, III*
William E. Davis, III
Texas Bar No. 24047416
The Davis Firm P.C.
213 North Fredonia, Suite 230
Longview, Texas 75601
Tel: (903) 230-9090
Email: bdavis@davisfirm.com

---

[8] Defendants suggest that Dr. Bretschneider improperly refers to a "designer of the LED chip" that is distinct from the POSITA he defines for portions of his opinions. This is false. "*As the designer of the LED chip, a person of skill in the art* would implicitly understand the functions of the first and second n/p-electrodes and the insulating layers." Dkt. No. 39-1 at ¶82 (emphasis added). Dr. Bretschneider's "designer of the LED" is a POSITA. This is another case of Defendants making much ado about nothing.

>Jeffrey T. Lindgren
>(*pro hac vice*)
>Richard C. Vasquez
>(*pro hac vice*)
>Eric W. Benisek
>(*pro hac vice*)
>Robert S. McArthur
>(*pro hac vice*)
>Vasquez Benisek & Lindgren LLP
>1550 Parkside Drive, Ste 130
>Walnut Creek, CA 94596
>Tel: (925) 627-4250
>Email: jlindgren@vbllaw.com
>Email: rvasquez@vbllaw.com
>Email: ebenisek@vbllaw.com
>Email: mcarthur@vbllaw.com
>
>***Attorneys for Plaintiff Everlight Electronics Co., Ltd.***

## CERTIFICATE OF SERVICE

I certify that this document has been served on all counsel of record via the Court's elecronic CM/ECF system on the 13th day of May, 2022.

>*/s/ William E. Davis, III*
>William E. Davis, III